Filed 7/11/19

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | |
| | D074139 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J241043) |
| v. | |
| J.S., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County,

Robert J. Trentacosta, Judge.  Affirmed.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and

Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Collette C.

Cavalier and Elizabeth M. Kuchar, Deputy Attorneys General, for Plaintiff and

Respondent.

I.

INTRODUCTION

Minor J.S. appeals a dispositional order adjudging him a ward of the court pursuant to Welfare and Institutions Code section 602 and placing him on formal probation, subject to various terms and conditions. On appeal, J.S. argues that certain probation conditions that permit searches of his electronic devices and impose limitations on his use of computers, the Internet, and social networking Web sites are unconstitutionally overbroad and should be stricken in their entirety. In the alternative, J.S. contends that the conditions at issue should be stricken and the case remanded to allow the trial court to determine whether the conditions can be narrowly tailored to serve the state's interest in rehabilitation.[1] We affirm the judgment.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

1. *The prosecution's evidence*

At the time of the incident that led to the charges against J.S., in October 2017, the victim, John Doe, was nine years old and lived with his grandmother in San Ramon, which is located in Contra Costa County, California. That month, a family friend and her son and two nephews, 12-year-old J.S. and his brother R.R., were temporarily staying at Doe's home. The family friend's nephews stayed in Doe's room with him.

---

[1] J.S. initially presented a second argument for relief in his opening brief, but he has withdrawn the argument.

On the morning of October 30, 2017, Doe woke up and turned on the light in his room. At that time, R.R. was still sleeping and J.S. was in the bathroom getting ready for school. When J.S. returned to the bedroom, he told Doe to suck his "private part," and said that if Doe did not do it, J.S. would hurt Doe. J.S. exposed his penis and "showed" Doe what he wanted Doe to do. Doe was afraid that J.S. would hurt him, so he got on the ground and began to orally copulate J.S.

Doe did not know how long J.S.'s penis was in his mouth, but at some point, Doe's grandmother walked by and witnessed Doe on the floor with his head moving back and forth while J.S.'s penis was in his mouth. Doe's grandmother screamed, " 'What the fuck!' " She immediately started crying. At that point, J.S. jumped back from Doe and with his penis still exposed said, "It's not what you think."

An officer arrived on scene and spoke with J.S. The officer asked J.S. to "give [the officer] the rundown of the events in his own words." J.S. said that he had awakened and left the room. He returned to the room to retrieve his backpack, and when he turned around, he noticed that Doe had been behind him. He then said that Doe "went down to his knees in front of him," and that Doe "went down and grabbed one of his legs." J.S. grabbed Doe's head and "moved it away from him," and that this was when Doe's grandmother walked by the room and said, " 'What the fuck?' "

2. *The defense*

J.S. testified that he did not tell Doe to suck his penis, and also denied that Doe had sucked his penis. J.S. testified that after getting ready for school in the bathroom, he went back into the bedroom to get his backpack. Doe was sitting on his bed with the

3

lights off.  J.S. grabbed his backpack and when he turned around, Doe was on the floor near him.  Doe grabbed J.S.'s shin.  J.S. asked Doe what he was doing, but Doe did not answer.  Doe began moving his hand up to J.S.'s thigh and J.S. again asked what he was doing.  Doe did not answer, and J.S. grabbed Doe's head and pushed him away.  That was when Doe's grandmother walked by and yelled out.  J.S. told her, " 'It's not what it looks like' " because he thought it may have looked like he had just hit Doe.  J.S. stated that his penis was never out of his shorts during the incident.

B.  *Procedural background*

On March 2, 2018, the Contra Costa District Attorney filed an amended juvenile wardship petition pursuant to Welfare and Institutions Code section 602, alleging that J.S. had committed one count of forcible oral copulation upon a person under the age of 14 (§ 288a, subd. (c)(2)(B)), and one count of lewd conduct with a child under the age of 14 (§ 288, subd. (a)).

The trial court sustained the petition as to both counts and ordered J.S. detained in juvenile hall.  The matter was then transferred to the court in San Diego County for disposition.

In April 2018, the trial court adjudged J.S. a ward of the court pursuant to Welfare and Institutions Code section 602 and placed him on probation.  The court set a number of terms and conditions of probation.

J.S. filed a timely notice of appeal on June 8, 2018.

4

III.

DISCUSSION

Among other conditions of probation, the trial court imposed the following conditions, which J.S. challenges on appeal:

> "The minor shall provide all passwords and pass phrases to unlock or unencrypt any file, system, or data of any type, on any electronic devices, such as a computer, electronic notepad, or cell phone, to which the minor has access. Minor shall submit those devices to a search at any time without a warrant by any law enforcement officer, including a probation officer."

> "The minor's 4th Amendment waiver extends to any electronic device, such as a computer, electronic notepad, or cell phone, which the minor uses or to which the minor has access. The minor's 4th Amendment waiver also extends to any remote storage of any files or data which the minor knowingly uses or to which the minor has access. The minor agrees to submit to a search of any electronic device, such as a computer, electronic notepad, or cell phone, at any time without a warrant by any law enforcement officer, including a probation officer."[2]

> "The minor shall not have a MySpace page, a Facebook page, or any other similar page and shall delete any existing page. The minor shall not use MySpace, Facebook, or any similar program."

> "The minor shall not knowingly access the Internet or any on-line service through use of an electronic device such as a computer, electronic notepad or cell phone, at any location without the prior approval by the probation officer."

> "The minor is not to use a computer for any purpose other than school related assignments. The minor is to be supervised when using a computer in the common area of his/her residence or in a school setting. Minor will be allowed to play video games online

---

[2]    For ease of discussion, we will refer to these first two conditions as the "electronic search conditions" throughout the remainder of this opinion.

under the supervision of his mother.  Minor is not to play games with other individuals online."[3]

J.S. contends that the electronic search conditions are unconstitutionally overbroad because they give officers access to vast quantities of private, irrelevant information, and therefore, are not narrowly tailored to any state interest.  J.S. contends that the computer, Internet and social networking conditions are also unconstitutionally overbroad because they "impermissibly impinge[ ] on his First Amendment rights."

A juvenile court "has wide discretion to select appropriate conditions and may impose ' "any reasonable condition that is 'fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.' " '  [Citations.]"  (*In re Sheena K.* (2007) 40 Cal.4th 875, 889 (*Sheena K.*).)  "A probation condition may be 'overbroad' if in its reach it prohibits constitutionally protected conduct."  (*People v. Freitas* (2009) 179 Cal.App.4th 747, 750, disapproved of on other grounds in *People v. Hall* (2017) 2 Cal.5th 494, 503, fn. 2.)  The essential question in an overbreadth challenge "is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement."  (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

---

3    For ease of discussion, we will refer to these three conditions jointly as the "computer, Internet and social networking limitations" throughout the remainder of this opinion.

A. *The electronic search conditions*[4]

J.S. concedes that he did not object to the imposition of the electronic search conditions in the trial court. J.S. contends, however, that "his claim [regarding the electronic search conditions] is cognizable on its face as it restricts his constitutional rights."

Challenges to probation conditions ordinarily must be raised in the trial court; if they are not, appellate review of those conditions will be deemed forfeited. (*People v. Welch* (1993) 5 Cal.4th 228, 234–235 [extending the forfeiture rule to a claim that probation conditions are unreasonable when the probationer fails to object on that ground in the trial court].) However, a defendant who did not object to a probation condition at sentencing may raise a challenge to that condition on appeal if the defendant's appellate claim "amount[s] to a '*facial* challenge' " (italics added), i.e., a challenge that the "phrasing or language . . . is unconstitutionally vague and overbroad," and the determination whether the condition is constitutionally defective "does not require scrutiny of individual facts and circumstances but instead requires the review of abstract and generalized legal concepts—a task that is well suited to the role of an appellate court." (*Sheena K.*, *supra*, 40 Cal.4th at p.885.)

---

[4] A number of cases addressing the constitutionality of electronic search probation conditions are currently pending review in the Supreme Court. (See, e.g., *In re Ricardo P.* (2015) 241 Cal.App.4th 676, 680–681, review granted February 17, 2016, S230923; *In re Patrick F.* (2015) 242 Cal.App.4th 104, 108, review granted February 17, 2016, S231428.)

Because J.S. did not object to the imposition of the electronic search conditions in the trial court, he has forfeited any as-applied constitutional objections that he may be attempting to raise on appeal. Although J.S. characterizes his claim with respect to the electronic search conditions as constituting a facial constitutional challenge, it is clear that J.S.'s overbreadth claim with respect to these conditions does not present a pure question of law. Specifically, J.S. argues that "[u]nless the defendant has a history of storing illegal content on his computer, utilizing electronic means to embezzle money, stalking, hacking, or otherwise perpetrating an offense that is related to usage of a computer, the government does not have a compelling and unqualified interest in accessing all of this information." Although J.S. avoids making any reference to himself or the particulars of his case, the clear implication of the above statement is that his case involves none of the circumstances that he mentions as circumstances that could support the application of the electronic search conditions. However, in order to assess whether any of these circumstances are present in J.S.'s case, we would have to look to the sentencing record developed in the trial court, and in particular, those pertaining to J.S.'s criminal history and the circumstances of his crime. Thus, his contention presents an as-applied challenge to the electronic search conditions rather than a facial challenge, and any claim that the electronic search conditions are overbroad as-applied has been forfeited.

To the extent that J.S.'s challenge to the electronic search conditions on constitutional overbreadth grounds could be viewed as one that " 'present[s] "[a] pure question[ ] of law that can be resolved without reference to the particular sentencing

8

record developed in the trial court," ' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 889), we reject that contention. The question at issue in a facial overbreadth challenge to an electronic search condition is whether the search condition permitting searches of a probationer's computers and/or recordable media, in the abstract, and not as applied to the particular probationer, is insufficiently narrowly tailored to the state's legitimate interest in reformation and rehabilitation of probationers *in all possible applications*. (See *id.* at p. 885 [appellate claim that the language of a probation condition is unconstitutionally vague or facially overbroad "does not require scrutiny of individual facts and circumstances but instead requires the review of abstract and generalized legal concepts"].) When the electronic search conditions are viewed in this light, they may be understood as not being facially overbroad. Although it is readily apparent that application of this search condition could be constitutionally overbroad as applied to certain probationers in some circumstances, it is equally apparent that such a search condition may be entirely appropriate, and constitutional, in other circumstances. J.S. essentially concedes this point by listing circumstances in which he believes application of such conditions would be constitutionally sound—i.e., where the "defendant has a history of storing illegal content on his computer, utilizing electronic means to embezzle money, stalking, hacking, or otherwise perpetrating an offense that is related to usage of a computer." We agree that certain probationers may require more intensive supervision and monitoring—in particular, with respect to their use of computers and other electronic and recordable media—based on the specific facts of the case. For this reason, we reject

9

J.S.'s constitutional challenge to the electronic search conditions to the extent that he contends they are facially overbroad.

B. *The computer, Internet and social networking conditions*

As with the electronic search conditions, J.S. concedes that he did not object to the trial court's imposition of the computer, Internet and social networking conditions. However, he also asserts that he may challenge these restrictions on appeal because "where a condition of probation, on its face, unconstitutionally restricts a defendant's constitutional rights, trial counsel's objection is not required for this court to . . . strike or modify the term to comport with constitutional standards."

Although J.S. attempts to characterize his claim with respect to the computer, Internet, and social networking conditions as constituting a facial constitutional challenge, as J.S.'s argument makes clear, his claim is actually one in which he is contending that these conditions are unconstitutional as applied to him. For example, he argues that these "restrictions are not narrowly tailored to the compelling state interest in J.S.'s rehabilitation" because "J.S.'s offense, while serious in nature, did not involve use of a computer or the Internet." J.S. further argues that "[t]he conditions restricting his computer, Internet, and social media usage, [in contrast with probation conditions that 'appear to be related to the circumstances of J.S.'s crimes and appropriately tailored to his rehabilitation'], do not appear to be closely connected to the circumstances of his crimes and there is no basis in the record to conclude they would serve a rehabilitative purpose." It is clear that an analysis as to whether the computer, Internet, and social networking conditions are related to J.S.'s crimes and would serve a rehabilitative purpose as to J.S.

10

based on this record would "require scrutiny of individual facts and circumstances." (*Sheena K.*, *supra*, 40 Cal.4th at p. 885.) Thus, the failure to raise the objection in the trial court results in its forfeiture.

Although we conclude that J.S.'s challenge to the computer, Internet and social networking conditions constitute an as-applied challenge as set forth in his briefing—a challenge that we have determined is forfeited—we nevertheless also conclude that to the extent that one could understand the claim to truly be a facial challenge—i.e., one that " 'present[s] "[a] pure question[ ] of law that can be resolved without reference to the particular sentencing record developed in the trial court," ' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 889), we must reject such a contention, largely for the same reasons that we rejected such a contention with respect to the electronic search conditions. The question is whether in *all* possible applications the conditions limiting a probationer's use of computers, the Internet, and various social networking or social media Web sites are insufficiently tailored to the state's legitimate interest in reformation and rehabilitation of probationers. (See *id.* at p. 885.) The answer is clearly no. We can envision probationers for whom such restrictions may be necessary to ensure their effective reformation and rehabilitation, and in such circumstances, the imposition of such probation conditions would be constitutional.

In this regard, with respect to the social networking condition, we diverge from the conclusion of the court in *In re L.O.* (2018) 27 Cal.App.5th 706, 712–714, on which J.S. relies in his reply brief. The *In re L.O.* court determined that a probation condition imposed on a minor that stated " '[t]he Minor shall not access or participate in any Social

11

Networking Site, including but not limited to Facebook.com" was facially unconstitutional in every potential application. (*Id*. at pp. 711, 713.) In reaching this conclusion, the *In re L.O*. court relied on language in *Packingham v. North Carolina* (2017) 582 U.S. ___ [137 S.Ct. 1730, 1735, 198 L.Ed.2d 273] (*Packingham*), a case in which the United States Supreme Court struck down on First Amendment principles a state law making it a felony for registered sex offenders " 'to access a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages.' " (*Packingham*, 137 S.Ct. at pp. 1733, 1738.)

We are not convinced that *Packingham*, which involves the blanket criminalization of First Amendment activity on the part of those previously convicted of certain crimes and who have already completed their sentences, can or should be used to assess whether there may be a particularized circumstance in which a probationer may be prohibited from utilizing social networking sites in a manner consistent with constitutional principles during the period of probation. The relevant question for purposes of assessing whether a particular probation condition is unconstitutionally overbroad is "the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O*. (2010) 188 Cal.App.4th 1149, 1153.) In certain circumstances, a complete prohibition on the use of a probationer's access to social networking Web sites during the term of probation could be a close fit between the

legitimate purpose of the restriction—i.e., the reformation and rehabilitation of that probationer—and the burden that such a condition would impose on that probationer for the duration of the probationary term. For instance, it would seem appropriate and constitutionally sound to impose such a complete prohibition in cases in which the defendant used social networking sites to lure or taunt victims, or where a defendant used social networking sites to perpetrate the crime for which he is on probation. As applied to a defendant who has utilized social networking sites in such a manner, imposition of a complete prohibition with respect to social networking sites would be sufficiently tailored to the state's legitimate interest in reformation and rehabilitation of that probationer. Therefore, we do not agree with the *In re L.O.* court that a probation condition that prohibits a defendant from accessing social networking sites for the duration of the term of his probation is unconstitutional in every potential application.[5]

We thus reject a constitutional challenge on the ground that the computer, Internet and social networking conditions are facially overbroad.

---

[5]   To the extent that the probation conditions that J.S. challenges limit his access to the Internet or use of a computer, we note that these provisions do not entirely prohibit such usage. For example, the Internet usage condition allows use with the prior approval of the probation officer, and the computer usage condition allows use for school work, and permits the probationer to play video games under his mother's supervision. The *In re L.O.* court acknowledged that similar allowances with respect to social networking access and usage would render the social networking probation condition in that case "not facially overbroad." (See *In re L.O.*, *supra*, 27 Cal.App.5th at p. 713.) In our view, the Internet and computer use conditions imposed in this case are not facially overbroad, particularly considering that they do not entirely prohibit the use of the Internet or computers.

IV.

DISPOSITION

The judgment is affirmed.

AARON, Acting P. J.

WE CONCUR:

DATO, J.

GUERRERO, J.